UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the May 5, 2007
DeLaHoya/Mayweather Program,

        Plaintiff,

        -against-

ELVIS GONZALEZ and SANTIAGO
GONZALEZ, Individually, and d/b/a LA
HIGIENICA RESTAURANT,

        Defendants.
----------------------------------------------------------x

REPORT & RECOMMENDATION

08 CV 885 (CBA) (JMA)

APPEARANCES:

    Julie Cohen Lonstein, Esq.
    1 Terrace Hill Box 351
    Ellenville, NY 12428
    *Attorney for Plaintiff*

**AZRACK, United States Magistrate Judge:**

By order dated April 25, 2008, the above captioned matter was referred to me by the Honorable Carol B. Amon, United States District Judge, pursuant to 28 U.S.C. §636(b), for a report and recommendation on the damages to be awarded against the defendants, who have defaulted in response to a complaint which alleges violations of the Cable Communications Policy Act.

For the reasons set forth below, I respectfully recommend that judgment be entered against defendants, jointly and severally, *Garden City Boxing Club, Inc. v. Extasis Corp.*, 07-CV-3853 (NGG) (CLP) (E.D.N.Y. Aug. 1, 2008) (2008 Westlaw 3049905 at *8); *J&J Sports Productions, Inc. v. Peralta,* 07-CV-3616 (ENV) (KAM) (E.D.N.Y. Feb. 20, 2008) (2008

1

Westlaw 495542 at *6), in the amount of four thousand six hundred fifty dollars ($4,650), which reflects one thousand dollars ($1,000) in statutory damages, three thousand dollars ($3,000) for willful violation of the statute, a well as six hundred fifty dollars ($650) for costs.

## I. BACKGROUND

According to the complaint, Plaintiff held the right to distribute the entire television broadcast of the DeLaHoya/Mayweather boxing match program of May 5, 2007, including the preliminary bouts, via closed circuit television and encrypted satellite signal. The broadcast originated via a satellite uplink and was transmitted to cable systems and satellite companies pursuant to agreements Plaintiff had with entities in New York state. Having arranged the medium for distributing the program, Plaintiff also entered into agreements which allowed entities in New York to exhibit the program to their patrons. Compl. ¶¶16-18. Upon payment of the fee, commercial establishments could receive the decoded satellite signal and exhibit the program. *See Int'l Cablevision, Inc. V. Sykes,* 997 F.2d 998, 1000 (2d Cir. 1993) (discussing the technical details of pay-per-view programming). The Defendants Gonzalez collectively are alleged to be the principals of La Higienica, a restaurant located on Franklin Avenue in Brooklyn, and to have derived financial benefit from and to have had supervisory capacity and control over the activities which occurred there on May 5, 2007. Defendant Elvis Gonzalez appears as the principal of the establishment on a website page which sets forth information about La Higienica's liquor license. On information and belief either they or their agents and the business or its agents allegedly employed any of several possible technologies to intercept the signal without authority to do so and then displayed it. Compl. ¶¶8-11, 20.

In an affidavit, doc. #8 attach. #1, Joseph Gagliardi, President of J&J, avers that J&J

hired Signal Auditing, Inc. to contract with independent auditors who were to identify establishments that had exhibited the program without paying the fee. Toward that end J&J furnished Signal Auditing with a list of authorized establishments, those that had paid the fee, which list Signal distributed to each of its contractors. Defendants were not on that list, which is attached to his affidavit as Exh. B. J&J's files contain an affidavit from James Russo, Gagliardi Aff. Exh. C, which indicates that at 11:45 p.m. he entered La Higienica and observed one (1) television set which was exhibiting a portion of the program to about six (6) persons in an establishment with an estimated capacity of twenty-five (25). Gagliardi then sets forth the various possible non-innocent methods by which the interception might have occurred and explains that such interceptions are *per se* intentional and that he believes that this form of piracy costs his company millions in losses. These averments are offered to support a plea for maximum statutory damages. The Russo affidavit, Gagliardi Aff. Exh. C, is a form entitled "Piracy Affidavit." In addition to completing the form, Russo attached two (2) photographs of the outside of the premises that he made as part of his visit which lasted one (1) minute inside the establishment and during which he had not paid a cover charge, noted what the employee was wearing, observed the appropriate pay-per-view logo on the broadcast, identified the boxers and noted the colors of the trunks they were wearing, observed that the premises were restaurant style with tables and chairs, counted the patrons three (3) times and estimated the capacity at twenty-five (25). He also apparently made some sort of exceedingly brief video or clip, which has been submitted in cd form and which the court has viewed. It first depicts the words "LA HIGIENICA" on the front of a building and then seems to move to a window through which it next depicts a television upon which is displayed two unidentified individuals, headshots, who

presumably are standing around a boxer, again headshot, in the corner of a boxing ring, all context inferred from the viewer's perception of the depiction. The video clip is time stamped for May 5, 2007 at 11:45 to 11:46 p.m.

Plaintiff commenced the instant action on April 24, 2006. The defendants were served with a copy of the summons and complaint but failed to answer or otherwise move and the time to do so has expired. Docs. #4-7 (Summonses returned executed). As a result, the Clerk entered a notation of default on April 23, 2008. Doc. #9.

## II. DISCUSSION

**A.     Default**

A defendant's default is deemed an admission of liability and all the well-pleaded allegations in the plaintiff's complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 108 (2d Cir. 1997) (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default). The defendants have thus admitted the use of an unauthorized device to intercept coded and scrambled cable transmissions. The complaint states violations of 47 U.S.C. §§553(a)(1) and 605(a). Both these sections prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered "radio communications." *Joe Hand Promotions, Inc. v. Fofana*, No. 06 CV 2099, 2007 WL 2298372, at *4 (S.D.N.Y. Aug. 9, 2007) (*citing Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 434-435 (2d Cir. 2002); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996); *Time Warner Cable, etc. v. Taco Rapido Rest.*, 988 F. Supp. 107, 110-111 (E.D.N.Y.

4

1997); *Cablevision Sys. Corp. v. Muneyyirci*, 876 F. Supp. 415, 424-425 (E.D.N.Y. 1994)).

Plaintiff, however, must prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *See Transatlantic Marine*, 109 F.3d at 108. Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109 F.3d at 111 (citation and internal quotations omitted). Plaintiff's submission to the Court includes affidavits and documentary evidence that provide a basis for a default judgment. Accordingly, no hearing is required.

**B.     Damages**

Plaintiff seeks statutory damages for defendant's violations of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a), as well as enhanced damages pursuant to 47 U.S.C. §605(e)(3)(C)(ii). The court has discretion in assessing the amount of damages under these provisions. *See Taco Rapido Rest.*, 988 F. Supp. at 110.

**1.     Statutory Damages**

Plaintiff seeks damages for defendant's violations of 47 U.S.C. §§553(a)(1) and 605(a). Section 553(a)(1) prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. §553(a)(1).

5

Section 605 proscribes the unauthorized interception and publication of any "radio communication." 47 U.S.C. §605(a).

Where a defendant admits to violating both sections, a plaintiff may elect to recover damages under §605, which provides for greater recovery than §553. *See Sykes*, 75 F.3d at 131 n. 5. "[A] plaintiff cannot recover under both 47 U.S.C. §605 and §553." *Kingvision Pay-Per-View, Ltd. v. New Paradise Restaurant*, No. 99 CV 10020, 2000 WL 378053, at *2 (S.D.N.Y. April 11, 2000). Plaintiff has elected to recover damages under §605 rather than §553. Doc. #8, attach. #3 (Plaintiff's unpaginated Memorandum of Law at 6).

The range of statutory damages for a violation of §605(a) is $1,000 to $10,000. See 47 U.S.C. §605(e)(3)(C)(i)(II). The court has discretion to determine the number of violations and assess damages for each violation. *Id*. Although the statute does not clearly define "violation," "most cases applying the statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club, Inc. v. Perez*, No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006).

Although §605 provides little guidance as to how to set damages within the statutory range, courts in this circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events. *J&J Sports Production, Inc. v. Kosoria*, 06 Civ. 2102 (KMK) (S.D.N.Y. June 1, 2007) (2007 Westlaw 1599168 at *2) (citing cases); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 63 (E.D.N.Y. 2006). Some courts multiply the number of patrons present at the unauthorized broadcasting by a specific dollar amount, typically (but not always) the customary residential charge for the pay-per-view event being shown. *See, e.g., Taco Rapido Rest.*, 988 F. Supp. at

111 (awarding statutory damages of $50 per patron); *Cablevision Sys. Corp. v. 45 Midland Enterprises*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same). This per-patron valuation "is based on a theory of rough justice that the patrons viewing the event without access to the unauthorized showing would have ordered it themselves . . . . Plaintiff is thus fully compensated for any loss it suffered, and by divesting the defendant of any profits, it assures that defendant reaps no benefit from unlawful action." *J & J Sports Productions, Inc. v. Drake*, No. 06 CV 246, 2006 WL 2927163, at *3 (E.D.N.Y. Oct. 11, 2006) (quoting *Time Warner Cable of N.Y. City v. Googies Luncheonette*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). Alternatively, especially where the exact number of patrons is unknown, some courts award flat sum damages based on what they "consider[] just." *See, e.g., Garden City Boxing Club, Inc. v. Guzman*, No. 03 CV 8776, 2005 WL 1153728, at *3 (S.D.N.Y. April 26, 2005) (awarding $5,000); *King Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (same).

A court may consider the following factors in assessing a plaintiff's damages: the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Kingvision Pay-Per-View Ltd. v. Palaguachi*, No. 06 CV 2509, 2007 WL 42994, at *3 (E.D.N.Y. Jan. 3, 2007) (citing cases). Deterrence is also a pertinent consideration. *See, e.g., Sykes*, 75 F.3d at 132 (quoting 130 Cong. Rec. S14285 (daily ed. Oct. 11, 1984) (statement of Sen. Packwood)).

Gagliardi offers the only evidence of an amount, indirectly. He indicates that a commercial establishment could misrepresent its status and thereby pay the residential rate of

7

$54.95 for the broadcast. In this case, under the formula used by Judge Karas in *Kosoria*, the damage award would be six (6) patrons multiplied by the residential charge for the program, $54.95, which results in an award of $329.70, a sum less than the statutory minimum of $1,000. The sum of $329.70 amply demonstrates that Gagliardi's request of $10,000, the statutory maximum, is wholly out of proportion to the offense. Alternatively, the court could multiply the residential rate of $54.95 by the establishment's capacity. In *Kosoria* Judge Karas eschewed this formula because it had a punitive nature to it, even though at some point during the course of a series of boxing matches, a program which may air for several hours, the establishment, from a theoretical and speculative view, might actually reach its capacity. 2007 Westlaw 1599168 at *2. The punitive or deterrent nature of the regulatory scheme lies in the enhancement and not in the award of actual or statutory damages. Accordingly, I respectfully recommend a base award of $1,000.

**2. Enhanced Damages**

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii), which provides for enhanced damages if the violation was committed willfully and for commercial advantage or private financial gain. Willfulness is defined as "disregard for the governing statute and an indifference for its requirements." *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (*quoting Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-127 (1985)). It is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Such willfulness is present here. Defendant never contracted for the right to broadcast the program.

In order to receive the program, someone connected with La Higienica must have engaged in some deliberate act. In addition, the Court may draw an inference of willfulness where, as here, a defendant fails to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *Kingvision Pay-Per-View Ltd. v. Cazares*, No. 05 CV 2934, 2006 WL 2086031, at *4 (E.D.N.Y. July 25, 2006) (*citing Fallaci v. The New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or premiums for food and drinks. *See Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc.*, No. 01 CV 6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001). Courts also consider the plaintiff's actual damages. *Id.*

Plaintiff does not demonstrate the commercial profit defendants reaped by exhibiting the fight. There is no evidence that defendants received a cover charge or a premium on food or drinks. Moreover, there is no suggestion that defendants have engaged in cable piracy on prior occasions. Under these circumstances, the statutory maximum enhancement requested by plaintiff exaggerates the nature of the offense, even where the offenders are not entitled to the benefit of the doubt from having failed to respond to legal process.[1] Given the discretion reposed in the district court by the statutory language, the legislature would hardly be surprised

---

[1] Congress actually enacted a modest incentive to participate. "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(3)(C)(iii).

if a court relied on the traditional concept of treble damages, which has been used in these cable theft cases as a sum specific deterrent as opposed to a discretionary deterrent. *J&J Sports Productions, Inc. v. Jusna, Inc.*, 553 F. Supp.2d 226, 229 (E.D.N.Y. 2008); *J&J Sports Productions, Inc. v. Guzman*, 553 F. Supp.2d 195, 200 (E.D.N.Y. 2008); *J&J Sports Productions, Inc. v. Peralta*, 07-CV-3616 (ENV) (KAM) (E.D.N.Y. Feb. 20, 2008) (2008 Westlaw 495542 at *6 (collecting cases)); *see Googie's Luncheonette*, 77 F. Supp.2d at 491. Accordingly, I respectfully recommend an enhancement of $3,000 for a total statutory damage award of $4,000.

C. **Attorney's Fees and Costs**

As the prevailing party, plaintiff is entitled to an award of reasonable attorney's fees and costs. 47 U.S.C. §605(e)(3)(B)(iii). The record contains no evidence with respect to attorney's fees. Plaintiff seeks reimbursement for costs in the amount of $650, which represents the court filing fee and service of process fees. Doc. #8 attach. 2 (Lonstein Aff.). These costs, supported by documentary evidence, are reasonable. Kingvision Pay-Per-View Ltd. v. Cazares, No. 05 CV 2934, 2006 WL 2086031, at *6 (E.D.N.Y. July 25, 2006).

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff be awarded $1,000 in statutory damages, $3,000 in enhanced damages and costs of $650. Thus, judgment should be entered against the defendants, jointly and severally, in the amount of $4,650.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order.

*See* 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

Dated: Brooklyn, New York
October 31, 2008

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent by mail to the following:

Elvis Gonzalez
100 Elton Street Apt. 2D
Brooklyn, NY 11208-1068

Santiago Gonzalez
736 Franklin Avenue
Brooklyn, NY 11238-4703

La Higienica Restaurant
736 Franklin Avenue
Brooklyn, NY 11238-4703